**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

| | |
|---|---|
| **SHELLIE WINTERS SHANKS,** | **CIVIL ACTION NO. 5:25-cv-154-KKC** |
| **Plaintiff,** | |
| **v.** | **OPINION AND ORDER** |
| **FRANK BISIGNANO,** *Commissioner of Social Security,* | |
| **Defendant.** | |

*** *** ***

Plaintiff Shellie Winters Shanks brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision denying her claim for Supplemental Security Income and Disability Insurance benefits. The Court, having reviewed the record, will affirm the Commissioner's decision.

## I. BACKGROUND

The decision under review was rendered by Administrative Law Judge ("ALJ") Karen R. Jackson on February 12, 2024. (Administrative Record "AR" 17-27.) On March 13, 2024, Plaintiff requested the Appeals Council review the ALJ's unfavorable decision. (AR 286-89.) The Appeals Council denied Plaintiff's request for review on February 26, 2025, making the ALJ's decision the final decision of the Commissioner. (AR 1-3.) This appeal followed.

## II. REVIEW PROCESS AND ALJ DECISION

### A. Standard of Review

This Court's review of the Administrative Law Judge's decision is limited to determining whether it "is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). The

substantial evidence threshold "is not high," and "defers to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, 587 U.S. 97, 98, 103 (2019). The substantial evidence standard—more than a mere scintilla of evidence but less than a preponderance, *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)—is even less demanding than the "clearly erroneous" standard that governs appellate review of district court fact-finding, which is itself a deferential standard. *Dickinson v. Zurko*, 527 U.S. 150, 152–53 (1999).

In reviewing the decision of the Commissioner, courts do not try the case de novo, resolve conflicts in the evidence, or assess questions of credibility. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Similarly, courts do not reverse findings of the Commissioner or the ALJ merely because the record contains evidence to support a different conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Rather, this Court must affirm the ALJ's decision if substantial evidence supports it, even if this Court would have arrived at a different conclusion. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

### B. ALJ Process

To determine whether a claimant has a compensable disability under the Social Security Act, the ALJ applies a five-step sequential process. 20 C.F.R. § 404.1520(a)(1), (4); *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 n.6 (6th Cir. 2016) (describing the five-step evaluation process). The five steps are:

*Step 1*: If the claimant is doing substantial gainful activity, the claimant is not disabled.

*Step 2*: If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

2

*Step 3*:    If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his or her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

*Step 4*:    If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

*Step 5*:    If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x. 162, 169 (6th Cir. 2016) (citing *Rabbers*, 582 F.3d at 652).

If, at any step in the process, the ALJ concludes that the claimant is or is not disabled, the ALJ can then complete the "determination or decision and [the ALJ] do[es] not go on to the next step." 20 C.F.R. § 404.1520(a)(4). In the first four steps of the process, the claimant bears the burden of proof. *Sorrell*, 656 F. App'x. at 169 (quoting *Jones v. Comm'r of Soc. Sec.* 336 F.3d 469, 474 (6th Cir. 2003)). If the claim proceeds to step five, however, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . and vocational profile." *Id.* (citation and quotation marks omitted); *see also* 20 C.F.R. § 404.1520(g)(1).

**C. ALJ Decision**

In denying Shanks' claim, the ALJ engaged in the five-step sequential process set forth in the regulations under the Social Security Act 20 C.F.R. § 404.1520(a)-(e).

At step one, the ALJ determined that Shanks has not engaged in substantial gainful activity since January 5, 2022, the alleged onset date. (AR 20, 40.)

At step two, the ALJ determined that Shanks suffers from the following severe impairments:

Obesity, diabetes with peripheral neuropathy, status post partial medial meniscectomy, osteopenia, degenerative disc disease of the lumbar spine,

3

> degenerative changes in the left knee, status post right foot excision of lipoma, ankylosing spondylitis, bilateral carpel tunnel syndrome, osteoarthritis of the bilateral knees, osteoarthritis of the right shoulder, anterior talofibular of the right ankle, status post left carpal tunnel release and revision, left ring trigger finder s/o release and DeQuervain's tenosynovitis, synovial cyst of right popliteal space, chondroma right medial knee, right knee Baker's cyst s/p aspiration, cervical degenerative disc disease with disc bulge and foraminal stenosis, right ring trigger finger, [and] right ankle sprain right anterior talofibular ligament.

(AR 20.)

At step three, the ALJ found that Shanks does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 21.)

Before proceeding to step four, the ALJ determined that Shanks has the residual functional capacity (RFC) to perform "sedentary" work as defined by 20 C.F.R. § 404.1567(4), 411.967(a), with the following limitations:

> lifting and carrying 20 pounds occasionally and 10 pounds frequently, stand and/or walk 2 hours in an 8-hour workday and sit 6 hours in an 8-hour workday. [Plaintiff] can occasionally push and pull as much as she can lift and carry bilaterally with the upper and lower extremities. She can frequently handle, finger, and feel with the right upper extremity. [Plaintiff] can occasionally climb ramps or stairs, but can never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, couch, and crawl. [Plaintiff] should avoid unprotected heights and moving mechanical parts. She should also avoid concentrated exposure to vibrations and extreme temperatures.

(AR 21.)

At step four, the ALJ found Shanks unable to perform past relevant work under 20 C.F.R. § 404.1565 and 416.965. (AR 25.)

4

At step five, the ALJ determined that, given Shanks' age, education, work experience, RFC, and the testimony of a vocational expert, there are jobs that exist in significant numbers in the national economy that she can perform and, thus, is not disabled.  (AR 26-27.)

On February 26, 2025, the ALJ's decision became the final decision of the Commissioner when the Appeals Council subsequently denied Shanks' request for review. *See* 20 C.F.R. § 422.210(a); (AR 1–3). Shanks has therefore exhausted her administrative remedies and filed a timely appeal in this Court.

## III.  ANALYSIS

Shanks challenges the ALJ's ruling on two grounds. First, she contends that the ALJ's evaluation of Dr. Brian Glover's medical opinion is improper because she failed to properly address the required supportability and consistency factors in accordance with 20 C.F.R. §§ 404.1520c, 416.916c. Second, Shanks argues that the ALJ's reliance on the state agency medical consultants prior administrative medical findings is improper because she failed to adequately articulate the persuasive value in accordance with 20 C.F.R. §§ 404.1520c, 416.916c.

The "most important factors" when considering the persuasiveness of medical opinions and findings are "supportability" and "consistency." 20 C.F.R. § 404.1520c(a); 20 C.F.R. § 416.920c(a). In assessing the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). And the consistency factor denotes the extent to which the medical opinion is "consistent . . . with the evidence from other medical sources and nonmendical sources in the claim[.]" *Id.* at (c)(2). In other words, "supportability" relates to the objective medical evidence and supporting explanation provided by a medical source to bolster their

*own* opinion, whereas "consistency" relates to the relationship of a medical source's opinion to *other* medical opinions and evidence of record. 20 C.F.R. § 416.920c(c)(1)-(2).

The measuring stick for an adequate evaluation is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of his finding as to whether the particular medical opinion was supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009). It is incumbent upon the ALJ to "explain his credibility determinations in his decision such that it 'must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007).

## A. ALJ's Evaluation of Dr. Glover's Medical Opinion

Shanks argues that the ALJ failed to adequately evaluate the supportability and consistency factors when assessing the opinion of Dr. Brian Glover, Shanks' treating orthopedist.

On June 23, 2022, Dr. Glover completed a Physical Assessment of Shanks. (AR 762-63.) He listed Shanks' diagnoses as ankylosing spondylitis and cervical spine stenosis. (AR 762.) He opined that Shanks could sit, stand, and/or walk for a total of two hours in an eight-hour workday. (*Id.*) He also opined that Shanks would need to take unscheduled breaks during an eight-hour workday every five to ten minutes and/or transition from sitting to standing every ten to fifteen minutes. (*Id.*) Dr. Glover noted that Shanks could occasionally lift and/or carry ten pounds, and should never lift and/or carry items that weigh twenty pounds or more. (*Id.*) Dr. Glover opined that Shanks could use her hands for 10-15% of an eight-hour workday and that she could use her fingers for fine manipulation for 70% of the workday and her arms for reaching for 5-10% of the workday. (*Id.*) Finally, Dr. Glover opined

6

that, as a result of her impairments and treatments, Shanks can be expected to be absent from work more than four times month. (AR 763.)

The ALJ determined that the findings were unpersuasive. As to the supportability factor, the ALJ found that Dr. Glover's opinion "is not supported by Dr. Glover's physical examination findings, which were unremarkable but was based on the claimant's self-reported limitations as noted at Exhibit B6F p.2[.]" (AR 25 (citing Ex. B6F, p. 2).) As to the consistency factor, the ALJ found that Dr. Glover's opinion "is not consistent with other medical evidence, including the clinical findings from her orthopedist and other specialist physicians." (*Id.* (citing Ex. B23F, B24F).)

### i. Supportability

Shanks argues that the ALJ did not properly evaluate the supportability factor because she considered findings based on Shanks' self-reported limitations and not any objective evidence. (R. 13 at 7-9.) The Commissioner, on the other hand, argues that the ALJ's supportability analysis was reasonable in stating that Dr. Glover's opinion was not supported by his own consultative examination and was instead based on Claimant's subjective complaints. (R. 15 at 4-5.)

Shanks seems to misunderstand the ALJ's evaluation: it was Dr. Glover's opinion, not the ALJ's, which was based on the Claimant's subjective complaints. (*See* AR 25 (citing Ex. B6F, p. 2) (ALJ explaining that Dr. Glover's Physical Assessment "was based on the claimant's self-reported limitations").) The ALJ appropriately referenced Dr. Glover's reliance on Claimant's subjective complaints and cited to Dr. Glover's previous examinations of Claimant, which do not support Dr. Glover's opinion. (*Id.*) Because the ALJ had grounded reasons for disagreeing with Dr. Glover's analysis, the Court finds that the ALJ properly evaluated the evidence regarding the supportability factor.

### ii. Consistency

Shanks also takes issue with the ALJ's consistency analysis of Dr. Glover's opinion, arguing that the ALJ failed to build an accurate and logical bridge in assessing whether other medical evidence is consistent with Dr. Glover's opinion. (R. 13 at 9.) The Commissioner argues that the ALJ's consistency analysis was sufficient because she considered other medical evidence, including the findings from her orthopedist and other specialist physicians. (R. 15 at 5 (citing Tr. 25 (citing Exh. B23F, B24F)).)

The Court finds that the ALJ's explanation reasonably articulated how she considered the evidence and arrived at a different conclusion than Dr. Glover. The ALJ's decision must be considered as a whole. *See Hill v. Comm'r of Soc. Sec.*, 560 Fed. Appx. 547, 552 (6th Cir. 2014); *Crum v. Comm'r of Soc. Sec.*, 660 Fed. Appx. 449, 455 (6th Cir. 2016) (finding the ALJ's conclusion was sufficiently supported by factual findings elsewhere in the decision that need not be repeated). Earlier in the ALJ's opinion, the ALJ discussed evidence within the record that was not consistent with Dr. Glover's opinion. Specifically, when describing the clinical findings earlier in her opinion, the ALJ explained that Claimant's pain returned when she stopped taking prescribed medication, and that the physician "recommended she resume this medication." (AR 24 (citing Exhibit 23F).) The ALJ found that "[t]hese findings suggest that the claimant's symptoms associated with her spine-related pain improve when she takes her prescribed medication." (*Id.*)

The ALJ referenced clinical findings made by Shanks' orthopedist and other specialist physicians and explained that Dr. Glover's Physical Assessment was not consistent with those findings. Because the Court can trace the path of the ALJ's reasoning, the Court finds that the ALJ properly evaluated the evidence regarding the consistency factor.

Accordingly, the ALJ's discussion of Dr. Glover's medical opinion can be understood to adequately address the persuasiveness of the opinion.

8

**B. ALJ's Evaluation of the State Agency Physicians' Administrative Findings**

Shanks argues that the ALJ's reliance on the state agency medical consultants' prior administrative medical findings is improper because she failed to adequately articulate their persuasive value in accordance with 20 C.F.R. §§ 404.1520c, 416.916c.m (R. 13 at 11-12.)

Two state agency physicians, P. Saranga, M.D., and Jacqueline Fister, M.D., reviewed the record and concluded that Shanks could perform a range of light work despite her limitations. (AR 128-29, 147-49.)

The ALJ evaluated Dr. Saranga and Dr. Fister's opinions, stating the following:

> The state agency adopted the residual functional capacity of the prior ALJ decision as noted above (Exhibits B5A, B7A, B11A, and B12A). These findings are generally persuasive as they are supported by a detailed discussion of the objective medication in the RFC additional discussion and are also consistent with the other medical evidence. As such, the above residual functional capacity generally adopts the findings of the state agency.

(AR 24-25.)

As to the supportability factor, the ALJ explained that Dr. Saranga and Dr. Fister's opinions were supported by "a detailed discussion of the objective medication in the RFC additional discussion." (*Id.*) Indeed, the prior administrative medical findings supported the opinions with a summary of the relevant medical evidence, including imaging that showed lumbar radiculopathy and degenerative disc disease with mild neural formal narrowing; clinical findings showing a limping gate in one visit but not in another; no use of assistive devices; tenderness, mild edema, and crepitus; knee range of motion at 0-120; and Shanks' self-reported statements of limitations. (*See* AR 148-49.) The Court finds that the ALJ properly evaluated the evidence regarding the supportability of the state agency medical consultants' opinions.

9

As to the consistency factor, the ALJ found that Dr. Saranga and Dr. Fister's opinions "are also consistent with the other medical evidence." (AR 24-25.) Earlier in her decision, the ALJ discussed other medical evidence. (*See* AR 22-24.) This includes a discussion of Shanks' carpal tunnel syndrome (AR 22-23), right knee pain (AR 23), left knee pain (*Id.*), right foot pain (*Id.*), back pain (AR 24), and diabetes (*Id.*). Many of these ailments, the ALJ noted, improved with treatment. (*Id.*) The ALJ also pointed out that Shanks declined ankle surgery and did not receive recurrent treatment. (AR 23-24.) Considering the ALJ's explanation and decision as a whole, *see Hill v. Comm'r of Soc. Sec.*, 560 Fed. Appx. 547, 552 (6th Cir. 2014), the ALJ adequately evaluated the evidence regarding the consistency of the state agency medical consultants' opinions.

Accordingly, the ALJ's discussion of Dr. Saranga and Dr. Fister's opinions can be understood to adequately address the persuasiveness of the state agency physicians' prior administrative medical findings.

### IV.  CONCLUSION

For the foregoing reasons, and the Court being otherwise sufficiently advised, it is hereby ORDERED that:

(1)  The Plaintiff's Motion for Judgment on the Pleadings (R. 13) is **DENIED**;

(2)  The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

(3)  A judgment will be entered contemporaneously with this order.

This 1st day of July, 2026.



**Signed By:**

*Karen K. Caldwell*

**United States District Judge**